Appeal of **THEODORE TIEDEMANN & SONS, INC.**       Docket No. 1254.

1. Upon the facts, it is *held* that the amount of depreciation deductible from gross income in income-tax returns must be computed on a straight-line basis rather than on the basis of appraisals of depreciable property at the beginning and close of the taxable period.

2. The taxpayer is not entitled to deduct from gross income in its tax return for the fiscal year ended November 30, 1919, a shrinkage in the value of foreign currencies from the date of acquirement in 1919 to November 30, 1919.

Submitted April 2, 1925; decided April 29, 1925.

*J. R. Little, Esq.*, for the taxpayer.

*A. H. Fast, Esq.*, for the Commissioner.

Before GRAUPNER, LANSDON, and SMITH.

This appeal is from deficiencies in income and excess and war-profits taxes for the periods June 1 to November 30, 1918, and December 1, 1918, to November 30, 1919, in the amounts of $14,256.77 and $12,013.63, respectively.

### FINDINGS OF FACT.

The business of the taxpayer is drygoods, commission and factory, and the manufacture of burial goods, robes, etc., and linings for the interior of caskets. In the manufacture of the linings of caskets, heavy embossing machines are used, the patterns are engraved, the rollers fit over the machine itself and are removable and represent different designs. In the manufacture of the linings and of the dresses and robes from 125 to 150 sewing machines are used. The amount of the depreciation claimed as a deduction in income-tax returns for the fiscal periods under review was arrived at in the following manner:

The depreciable properties were reappraised at the close of each taxable period and the amount of the depreciation claimed is the

difference between the determined value at the end of the year and the then book value. The book value was increased by the cost of all additions to depreciable property and reduced by all sales or other dispositions of such property.

The Commissioner has rejected this method of determining deductible depreciation and in lieu thereof has computed depreciation at straight-line rates.

In its income-tax return for the fiscal year ended November 30, 1919, the taxpayer claimed as a deduction $13,750.67, due to shrinkage in the value of foreign currencies owned at the close of the period in question. This loss was determined by deducting from the then value of the foreign currencies owned the cost of such currencies. The currencies were not purchased as a speculation but in the course of the taxpayer's regular business to establish credits abroad for the purchase of drygoods to be imported.

DECISION.

The determination of the Commissioner is approved.

OPINION.

SMITH: This appeal presents two questions for determination: (1) The proper method of computing depreciation in the case of this taxpayer, and (2) the deductibility of a shrinkage in value of certain foreign currencies acquired by the taxpayer in the course of its business.

The facts with respect to the depreciation item are stated in the findings of fact. The taxpayer did not use a straight-line method of depreciation, but determined the amount of deductible depreciation by the inventory method. To the book value of depreciable property at the beginning of the taxable period was added the cost of additions to such property, and there was deducted therefrom the book value of machinery sold or otherwise disposed of. At the close of the taxable period a reappraisal was made of the depreciable property and the difference between the amount of this reappraisal and the then book value of the property was claimed as the amount of the depreciation sustained. The Commissioner has rejected this method of computing depreciation and has determined the deductible depreciation by the straight-line method.

The method used by the taxpayer in taking its inventory is indicated by the following, taken from the transcript of the testimony given at the hearing:

A. Well, the method that has been followed since I have been connected with the business is to write off the whole amount at the end of the year, at the end of the fiscal year, reappraise the machinery and create a new inventory value. That, of course, would involve the addition of any new machines that came in during the period, and the elimination of any that may be scrapped or otherwise disposed of.

Q. Was that followed consistently?

A. Yes, sir.

Q. Did I understand you to say that you arrived at—in effect, arrived at the amount to be written off by taking the difference between the determined value at the end of the year and the present book value, the book value as of that date?

A. That was the amount of depreciation. For instance—May I illustrate?

Q. Yes.

A. For instance, if we started off with an inventory of $10,000 for machinery and we bought a machine for $2,000, and another for $1,500, at the end of the year that would be $13,500. On the other side of the ledger would appear what had been disposed of, and the difference between the two sides of the ledger would be the amount that was written off to profit and loss, the entire amount. Then, a new appraisal would be made of the machinery on hand and if that appraisal, instead of being $10,000 was $11,000, why then the machinery was appreciated, and if it was less than $10,000 it had depreciated—one way or the other. It was always done by a new appraisal.

The taxing act permits the deduction from gross income of a reasonable amount for exhaustion, wear and tear of property, including a reasonable allowance for obsolescence, section 234(a) (7), Revenue Act of 1918. In the instant appeal the Commissioner has determined such reasonable amount upon the basis of the cost of assets. The taxpayer has determined its reasonable allowance for exhaustion, wear and tear of property, and obsolescence by taking into account the market value of depreciable assets at the beginning and the close of the taxable period. This method of computing the allowance is not responsive to the language of the taxing act, since it takes into account other factors than those of exhaustion, wear and tear, and obsolescence.

The determination of the Commissioner upon this point should not be disturbed.

Upon the second point it appears that, in the summer or fall of 1919, the taxpayer placed a quantity of orders in France and a few in Germany; that the French franc looked very attractive to it at the price it was being sold for in August, 1919, seven francs for one dollar, and that it contracted to buy a quantity of those francs on a ninety-day basis. The reason for buying them upon such terms was that the merchandise would not be delivered sooner than that and, since it did not require the francs for immediate use, it preferred to carry them on an open account. It took the francs on the 29th of November as a matter of fact and paid for them at the price agreed plus the ninety days' interest. At November 30, 1919, the taxpayer had about 225,000 francs which had cost it seven francs to the dollar, and on which the value then was 10.15 cents per franc; likewise, it had 200,000 marks for which it had paid 4½ cents and which were worth on November 30, 1919, 2/28 cents per mark. The shrinkage in the value of the foreign exchange was $13,750.67, which the taxpayer claims as a deduction from gross income on the ground that it was a loss sustained within the taxable year ended November 30, 1919.

What the taxpayer purchased was paper francs and marks—in other words, obligations of the issuing banks. The taxpayer was not a dealer in foreign exchange. The obligations did not constitute inventoriable items. They are not to be treated differently from any securities which might have been purchased by the taxpayer. If they had increased in value from the date of purchase to the close of the taxable year, such increase would not have constituted taxable income. Neither did the shrinkage in value constitute a sustained loss. No gain or loss from the transaction was realized during the taxable year ended November 30, 1919.